

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LILLIAN IVETTE CANDELARIA
o/b/o J.L.G.L.,

                        Plaintiff,

    -v-

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

                        Defendant.
_____

1:21-CV-01230-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Lillian Ivette Candelaria brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) on behalf of her child, J.L.G.L., seeking judicial review of the final decision of the Commissioner of Social Security denying J.L.G.L. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Candelaria's motion (Dkt. No. 8) is granted, the Commissioner's motion (Dkt. No. 10) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[2]

On February 24, 2015, Candelaria filed an SSI application on behalf of her child, J.L.G.L., alleging that J.L.G.L. has been disabled since April 1, 2014.[3] (Tr. 235, 297). Born on May 31, 2006, J.L.G.L. was 8 years old at the time his mother filed the disability application on his behalf. (Tr. 297). The application was denied on June 2, 2015, after which Candelaria timely requested a hearing before an Administrative Law Judge. (Tr. 235, 243-45). On August 25, 2017, Candelaria and J.L.G.L. appeared with counsel before Administrative Law Judge William Weir (the "ALJ") for a hearing. (Tr. 841-858). On October 4, 2017, the ALJ issued a decision denying J.L.G.L.'s SSI claim. (Tr. 13-34). The Appeals Council denied review on March 22, 2018. (Tr. 1-7). Plaintiff appealed the decision to the United States District Court. (Tr. 773-74).

On August 30, 2019, Hon. Lawrence J. Vilardo remanded the matter on the basis that the ALJ failed in his duty to fully develop the record. (Tr. 812-26). The Court held that the ALJ had failed to consider evidence relating to the severity of J.L.G.L.'s arteriovenous malformation and evidence relating to Plaintiff's IQ in the context of Listing 112.05(B). (Id.).

Following remand, the ALJ held a telephone hearing on June 14, 2021. (Tr. 711). Plaintiff testified at the hearing and was represented by counsel. (Id.). On August 13, 2021, the ALJ issued a decision again denying J.L.G.L.'s claim. (Tr. 708-19). This action followed.

---

[2] The Court assumes the parties' familiarity with the case.
[3] References to "Tr." are to the administrative record in this case.

## **DISCUSSION**

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself;

and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III.   *The ALJ's Decision*

The ALJ first found that J.L.G.L. was a "school-age child" on the date of the application and an "adolescent" at the time of the hearing decision. (Tr. 712). The ALJ then followed the three-step process for evaluating J.L.G.L.'s SSI claim. At the first step, the ALJ found that J.L.G.L. has not engaged in substantial gainful activity since February 24, 2015, the date of his SSI application. (*Id.*) At the second step, the ALJ determined that J.L.G.L. has the severe impairments of a learning disorder and a speech and language disorder.[4] (*Id.*). At the third step, the ALJ found that J.L.G.L. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 713). The ALJ then proceeded to consider whether J.L.G.L. has an impairment or combination of impairments that functionally equals the Listings, but concluded that J.L.G.L. does not because J.L.G.L. does not have an

---

[4] The ALJ also found that J.L.G.L. had been treated for arteriovenous malformation, a condition which he determined was non-severe, even though it may have lasted more than 12 months. (Tr. 712).

5

impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 713-19). As a result, the ALJ held that J.L.G.L. has not been disabled within the meaning of the Act since the February 24, 2015 application date. (Tr. 719).

IV.     *Candelaria's Challenge*

Candelaria makes three arguments in support of her motion. First, she argues that substantial evidence does not support the ALJ's conclusion that J.L.G.L. does not have an impairment that meets or equals the Listings. (See Dkt. No. 8-1). In particular, Candelaria argues that the ALJ failed to follow the prior remand order which directed him to consider whether J.L.G.L. meets or medically equals Listing 112.05(B). (*Id.*). Second, Candelaria argues that the ALJ failed to properly consider J.L.G.L.'s anteriovenous malformation ("AVM"), improperly finding it to be non-severe at Step Two, and failing to consider it when analyzing the domain of health and physical well-being. (*Id.*). Third, Candelaria argues that the ALJ's conclusion that J.L.G.L. has less than marked limitations in the domain of attending and completing tasks is not supported by substantial evidence because the ALJ failed to properly consider a teacher questionnaire. (*Id.*).

As set forth below, the Court finds that the ALJ (1) failed to properly consider whether J.L.G.L. meets or medically equals Listing 112.05(B); and (2) did not set forth substantial evidence in support of his conclusion that J.L.G.L. has less than marked limitation in the domain of attending and completing tasks. Consequently, the Court remands this case for further consideration of J.L.G.L.'s impairments and limitations.

1. *Listing 112.05(B)*

In the prior Decision and Order of the District Court, Judge Vilardo found that the ALJ had erred by excluding evidence of J.L.G.L.'s IQ score based on untimely submission of the evidence. (Tr. 824). That new evidence reflected that J.L.G.L. had a full-scale IQ score of 70. (*Id.*). The Court stated, "with such a score, J.L.G.L. met the first prong of Listing 112.05(B) – and may well have met the second prong too – but the ALJ did not even consider that listing." (*Id.*).

There are two ways to establish *per se* disability under Listing 112.05, which applies to intellectual disorders. A claimant meets the criteria of Listing 112.05(B), if they have (as relevant here): (1) significantly subaverage general intellectual functioning evidenced by full scale (or comparable) IQ score of 70 or below; AND (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in two, of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; or (d) adapt or manage oneself.

Here, the ALJ stated that the criteria of Listing 112.05 was not satisfied because, despite a full-scale IQ score of 75 in February 2014 and a score of 70 in a later examination, J.L.G.L. did not have significant deficits in adaptive functioning required under Listing 112.05(B)(2). The ALJ stated: "[A]s noted above, he has not had two marked or one extreme limitations in the 'paragraph B' criteria." (Tr. 713). When applying the "paragraph B" criteria to two other Listings immediately prior in the decision, the ALJ had found: "The overall record supports findings that the claimant has a moderate limitation in the ability to understand, remember or apply information; moderate limitation in

7

interacting with others; moderate limitation in concentration, persistence or maintaining pace; and mild limitation in adapting and managing himself." (*Id.*). The ALJ's only explanation for these conclusions was a cursory sentence immediately prior which stated: "The record also does not reflect frequent distractibility, difficulty sustaining attention, and difficultly organizing tasks, hyperactive and impulsive behavior, or significant difficulties learning and using academic skills [...]." (*Id.*).

Although the Commissioner urges the Court to find that this explicit recitation of the "paragraph B" criteria is consistent with the remand order and sufficient under the law, the Court finds that the ALJ failed to appropriately address Listing 112.05(B) in this instance. When evaluating whether a child's impairments meet or equal a Listing, the ALJ must refer to the specific criteria set forth in the Listing and set forth his analysis of the criteria with sufficient specificity to enable a reviewing court to determine whether the ALJ's decision is supported by substantial evidence. *Lanique Q.R. v. Comm'r of Soc. Sec.*, 19-CV-1196, 2021 U.S. Dist. LEXIS 62936, at *9 (W.D.N.Y. Mar. 31, 2021). It is not the job of the reviewing court to make an independent determination as to whether the record supports a finding that the child meets or equals a listing; rather, the ALJ needs to articulate his basis for finding that child's impairment does not meet or equal the criteria. *Barone v. Comm'r of Soc. Sec.*, 19-CV-1636, 2020 U.S. Dist. LEXIS 210400, at *6 (W.D.N.Y. Nov. 9, 2020). The Commissioner's determination "must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment." *See Walker v. Astrue*, 06-CV-1180, 2010 U.S. Dist. LEXIS 54719, at *8-9 (N.D.N.Y. June 3, 2010).

There is no dispute that J.L.G.L. has a full-scale IQ score of 70. Thus, he meets the criteria for Listing 112.05(A). The question here is whether his impairments meet the functional criteria of 112.05(B) for a finding of disability. Although the ALJ conclusively stated that J.L.G.L. did not meet the "paragraph B" criteria, he neglected to make anything more than a cursory reference to evidence of the record to explain those findings. In fact, the ALJ's brief explanation for his "paragraph B" determinations (in a section devoted to the evaluation of two other Listings) indicates a lack of meaningful review of each of the criteria in relation to the record evidence. In fact, none of the attributes or behaviors recited by the ALJ in reference to Listings 112.02 and 112.11 can be said to apply to the functional area of interacting with others, or, at least arguably, to the area of adapting or managing oneself. The ALJ must assess these functional areas to determine whether the "paragraph B" criteria of Listing 112.05 are satisfied.

Further, the Court finds that the ALJ's conclusion that the record "does not reflect [...] significant difficulties learning and using academic skills," (Tr. 713), to be a clear mischaracterization of the evidence of the record, which plainly shows that J.L.G.L. had a learning disability and significant academic skill deficits despite receiving special education resources. *See* Tr. 314 (Individualized Education Plan indicated J.L.G.L. "struggle[d] across all subject areas and need[ed] maximum teacher support" because of cognitive abilities in the borderline range, with "extremely low" processing skills); Tr. 1573 (psycho-educational evaluation indicated that J.L.G.L. showed delayed academic skills in all areas and was performing at a second to third grade level despite being in eighth grade). Indeed, the record contains considerable evidence that J.L.G.L. has significant limitations in functions relevant to the "paragraph B" criteria, including delays in receptive

and expressive language, reduced comprehension, delayed information processing, and trouble maintaining attention.

It is not apparent from the ALJ's decision how he made his "paragraph B" findings. The Court cannot tell what evidence the ALJ may have considered in making his determination on those points. *See Powers v. Colvin*, 15-CV-6510, 2016 U.S. Dist. LEXIS 136838, *16-18 (remanding where it was unclear how the ALJ interpreted the medical records in determining whether plaintiff met a Listing since the ALJ did not indicate which evidence was considered). It is the ALJ's responsibility to build an accurate and logical bridge between the evidence and his conclusions to allow for meaningful review. *See Gonzalez v. Saul*, 18-CV-6240, 2019 U.S. Dist. LEXIS 140385, at *14 (W.D.N.Y. Aug. 19, 2019) (remanding where the ALJ failed to provide a sufficient explanation for why Listing 112.05(B) criteria were not met). Where he has not done so, remand is appropriate.[5]

Accordingly, the Court concludes that the ALJ failed to properly consider whether J.L.G.L. meets or medically equals Listing 112.05(B).

2. *Evaluation of Teacher's Opinion*

Plaintiff next argues that the ALJ did not sufficiently articulate how he evaluated the opinion of J.L.G.L.'s teacher, Ms. Pluff, which supported a finding of at least a marked limitation in attending and completing tasks.

---

[5] In addition, although there may be some overlap between the subject matter of the six domains covering functional equivalence and the second prong of Listing 112.05(B), it is "well established that the ALJ cannot bootstrap onto later findings regarding functional equivalence in deciding whether a plaintiff is disabled for symptoms which medically meet or equal a Listing." *See Barone*, 2020 U.S. Dist. LEXIS 210400, at *9.

In the domain of attending and completing tasks, the Commissioner considers "how well [the child can] focus and maintain [his or her] attention, and how well [he or she] begin, carry through, and finish . . . activities, including the pace at which [he or she] perform activities and the ease with which [his or her] change them." *See* 20 C.F.R. § 416.926a(h). Examples for limited functioning in this domain include: easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; slow to focus on, or fail to complete activities of interest; repeatedly becoming sidetracked from activities or frequently interrupting others; easily frustrated and giving up on tasks, including ones capable of completing; and requiring extra supervision to keep the child engaged in an activity. *See* 20 C.F.R. § 416.926a(h)(3).

In this domain, the ALJ concluded that J.L.G.L. has a less than marked limitation. In his discussion, the ALJ referred to questionnaires provided by two teachers, Ms. Blenk and Ms. Teall, but made no substantive references to a questionnaire provided by a third teacher, Ms. Pluff. Candelaria argues that the ALJ's failed to consider Ms. Pluff's opinion or adequately explain his reasons for discounting it. She further argues that this amounts to reversible error because, had the ALJ not improperly rejected Ms. Pluff's opinion, it was likely to change his conclusion that J.L.G.L. had a less than marked limitation in this domain. The Court agrees.

When an opinion comes from a nonmedical source, such as a teacher, the regulations direct an ALJ to consider the same factors used in evaluating medical opinions, i.e., supportability, consistency, specialty, examination, and relationship, although not every factor will apply. 20 C.F.R. § 416.927(f)(1); *see* 20 C.F.R. § 416.927(c). However, while an ALJ "will evaluate every [medical] opinion we receive, the regulations

11

generally give more flexibility when it comes to nonmedical opinions. *See* § 416.927(f)(2) Nonetheless, the regulations provide that "the adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning [...]." *Id.*

Here, the ALJ stated that he gave "significant weight" to the opinions of all three teachers, i.e. Ms. Blenk, Ms. Teall, and Ms. Pluff. (Tr. 718-19). However, he failed to adequately explain why Ms. Pluff's opinions as to J.L.G.L.'s limitations in attending and completing tasks were discredited. While explaining his reasoning, the ALJ stated that "both teachers" (ostensibly referring only to Ms. Blenk and Ms. Teall) taught J.L.G.L. in special education classes in third and fifth grade, respectively. (Tr. 718). He went on to state that Ms. Blenk and Ms. Teall were specialized in special education and they taught J.L.G.L. for full school days. (*Id.*). The decision does not provide any explicit reasoning as to why Ms. Pluff's opinion was or was not credited. The ALJ failed to articulate any of the factors he used in evaluating Ms. Pluff's opinion. *See Baez v. Colvin*, 6:13-CV-142, 2014 U.S. Dist. LEXIS 42831, at *27 (N.D.N.Y. Mar. 31, 2014) (finding remand was required where the ALJ failed to even acknowledge a teacher's opinion was in the record).

The Commissioner argues that the ALJ sufficiently explained his reasons for rejecting Ms. Pluff's opinion with his statement that "Ms. Blenk and [Ms.] Teall were consistent with each other." (Tr. 718). This could be read as the ALJ determining that Ms. Pluff's opinion was, by contrast, not consistent with the others. However, such meaning is far from explicit. Moreover, it does not reflect the reality that Ms. Pluff's opinion on J.L.G.L.'s limitations in attending and completing tasks was, in fact, largely consistent with

the opinion of Ms. Blenk in that area, as well as with at least one opinion offered by Ms. Teall.

"The opinion of a teacher who works with a child on a daily basis and observes [him] in a social setting with peers, as well as adults, is an invaluable method to ascertain the severity of an impairment and requires careful consideration." *Mohamed v. Astrue*, 08-CV-0598, 2010 U.S. Dist. LEXIS 64808, at *13-14 (W.D.N.Y. June 29, 2010). "While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." *Tonya B. v. Comm'r of Soc. Sec.*, 5:21-CV-787, 2022 U.S. Dist. LEXIS 178300, at *38 (N.D.N.Y. Sept. 30, 2022). Ms. Pluff has taught J.L.G.L. in a special education classroom, seeing him daily during the 2017-18, 2018-19, and 2019-20 school years. (Tr. 1022). In her September 3, 2020 teacher questionnaire, Ms. Pluff opined that in the area of attending and completing tasks, J.L.G.L. had "serious problem[s]" on an hourly basis in his ability to refocus to task when necessary and to carry out multi-step instructions, and a "serious problem" with completing class/homework assignments and completing work accurately on a daily basis. (Tr. 1024). In addition, she opined that J.L.G.L. has an "very serious problem" with working at a reasonable pace and finishing tasks on time. (*Id.*).

Consistent with Ms. Pluff's opinion, Ms. Blenk opined that J.L.G.L. had a "serious problem" with attending and completing tasks. (Tr. 364, 373). In her April 11, 2015 questionnaire, Ms. Blenk stated that J.L.G.L. needed prompts to stay focused and was easily distracted. (Tr. 716). She stated that J.L.G.L. would use distracting measures to escape doing work that was too hard, but that since moving to a 12-student classroom, the work was more at his functional level. (*Id.*).

In her May 15, 2017 questionnaire, Ms. Teall's opinion was also consistent with that of Ms. Pluff. She opined that J.L.G.L. had an "obvious problem" with attending and completing tasks. (Tr. 427). She stated that J.L.G.L. needed redirection to finish work and had serious problems carrying out multi-step instructions, completing class and homework assignments, and working a reasonable pace and finishing on time. (*Id.*). However, as the ALJ pointed out, in a second questionnaire completed by Ms. Teall two weeks later, she categorized J.L.G.L. problems in this area as slightly less serious. (Tr. 443).

In addition to offering an opinion largely consistent with the other teachers, Ms. Pluff also offered the most recent opinion in the record. Additionally, she was the only teacher to have taught J.L.G.L. over multiple school years. From the decision, the Court cannot assess whether the ALJ even considered these facts, which are relevant to the factors necessary for evaluating opinion evidence. *See* 20 C.F.R. § 416.927(f)(2).

The ALJ's decision lacks explanation as to how Ms. Pluff's opinion was inconsistent with that of the other teachers or less persuasive than other evidence in the record relevant to this domain. The ALJ's failure to consider Ms. Pluff's opinion under the relevant factors was error. *See Ortiz-Wilson v. Saul*, 6:18-CV-6424, 2019 U.S. Dist. LEXIS 205441, at *11-12 (W.D.N.Y. Nov. 26, 2019) (finding that the ALJ erred in consideration of teacher's questionnaires by not applying the factors to evaluate non-medical sources). Further, this improper weighing of the opinion evidence was not harmless, as Ms. Pluff's questionnaire constitutes significant evidence that J.L.G.L. has marked limitation in the domain of attending and completing tasks. *See Martinbeault v. Astrue*, 07-CV-1297, 2009 U.S. Dist. LEXIS 116246, at *20 (N.D.N.Y. Oct. 27, 2009)

(holding that a teacher's report which documented "serious" and "very serious" problems in several relevant areas did not support the ALJ's ultimate conclusion that claimant had less than marked limitation in a certain domain). Because the ALJ determined that J.L.G.L. also had marked limitation in the domain of acquiring and using information, a determination of disability would be appropriate under those circumstances.

For these reasons, the Court finds that substantial evidence does not support the ALJ's Listings determination. The Court also finds that substantial evidence does not support the ALJ's conclusion that J.L.G.L. has less than marked limitation in the domain of attending and completing tasks. On remand, the Commissioner shall reassess and provide further reasoning for his determinations consistent with this decision. The Commissioner is also directed to consider Calendaria's additional argument related to the severity of J.LG.L.'s AVM condition and its effect on the domain of health and physical well-being.

## CONCLUSION

For the foregoing reasons, Candelaria's motion for judgment on the pleadings (Dkt. No. 8) is granted, the Commissioner's motion (Dkt. No. 10) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.

Dated:   March 27, 2024
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge